UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVID SANDOVAL, RAUL CORIA,
and all other similarly
situated persons,

               Plaintiffs,

          v.

RIZZUTI FARMS, LTD., and JOHN
R. RIZZUTI and JANE DOE
RIZZUTI, a marital community,

               Defendants.

NO. CV-07-3076-EFS

**ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

    Before the Court, without oral argument, is Plaintiffs' Motion for Class Certification.  (Ct. Rec. 23.)  Plaintiffs seek to certify approximately 200 hundred low-wage, limited English migrant workers that Defendants allegedly injured through illegal employment and housing practices.  After reviewing the submitted material[1] and relevant authority, the Court is fully informed and grants Plaintiffs' motion. The reasons for the Court's Order are set forth below.

---

[1]Defendants did not file a response - a response was due on June 2, 2008.

ORDER * 1

## I. Background

Defendant John R. Rizzuti works for Defendant Rizzuti Farms, Ltd., an agricultural business operating asparagus and cherry farms near Mattawa, Washington.  Plaintiffs - and the proposed class members - worked for Defendants as migrant farm hands during the 2005, 2006, and 2007 asparagus or cherry harvests.

Defendants orally agreed to pay Plaintiffs piece rates plus per-pound bonuses if they remained employed with Defendants through the harvest season.  Plaintiffs allegedly received neither the promised piece rates nor the end-of-season bonuses.

When the promised wage increase never materialized, approximately 200 workers - including Plaintiffs - confronted Defendants on May 19, 2006.  Defendants allegedly refused to honor the promised wages and threatened to terminate the workers and remove them from their migrant worker housing if they did not immediately disband.  For support, Defendants called the Grant County Sheriff's Department.  Several deputies responded and ordered the workers to either disband or leave the farm.  Some workers, including Plaintiff David Sandoval, left the farm; other workers, including Plaintiff Raul Coria, returned to work.

In addition to allegedly violating oral agreements, Plaintiffs insist Defendants failed to pay them lawful minimum wages and housed them in overcrowded, uncertified, on-farm housing.

On August 31, 2007, Plaintiffs filed a Class Action Complaint for Damages and Declaratory and Injunctive Relief based on Defendants' alleged conduct.  (Ct. Rec. 1.)  In their class certification motion, Plaintiffs move to certify the following general class:

All migrant and seasonal farm workers employed by Defendant Rizzuti Farms, Ltd. or Defendant John R. Rizzuti ("Defendant Employers") during the 2005, 2006, or 2007 asparagus or cherry harvests.

(Ct. Rec. 23 at 2.)   The general class is referred to as the "Agricultural class."

Plaintiffs also move to certify two (2) subclasses:

(1)  All workers who resided in the migrant worker housing provided by Defendant Employers during the 2005, 2006, or 2007 asparagus or cherry harvests; and

(2)  All workers who were threatened or intimidated by Defendant Employers or whose employment with Defendant Employers was temporarily or permanently terminated on May 19, 2006.

*Id.* at 2-3.  The first subclass is referred to as the "Housing subclass"; the second subclass is referred to as the "Retaliation subclass."

## II. Discussion

### A. Class Certification Hearing

While evidentiary hearings on class certification are common, they are not required if there is enough information from the pleadings and submitted material for the Court to effectively decide the certification issue. *See Gen. Tel. Co. of the Sw v. Falcon,* 457 U.S. 147, 160 (1982). A certification hearing is unnecessary here for two (2) reasons: First, Plaintiffs' motion is unopposed.  Local Rule 7.1(h)(5) notes that a failure to respond may be viewed as consent to entry of an Order adverse to the defaulting party.  And second, Plaintiffs' pleadings are thorough and accompanied by nine (9) declarations, providing the Court with sufficient factual information to make an informed ruling on class certification.  Accordingly, the Court finds a hearing is unnecessary. *See* LR 7.1(h)(3).

ORDER * 3

**B. Class Certification Standard**

Class certification under Federal Rule of Civil Procedure 23 is a two-step process.  First, the party seeking certification must satisfy Rule 23(a)'s four (4) prerequisites, which are:

(1)    Numerosity (a class so numerous that joinder of all members is impracticable;

(2)    Commonality (there are questions of law or fact common to the class);

(3)    Typicality (the claims or defenses of the representative party are typical of the claims or defenses of the class); and

(4)    Adequacy (the representative parties will fairly and adequately protect the class' interests).

FED. R. CIV. P. 23(a).  Once these requirements are met, the party seeking certification must next demonstrate that the lawsuit qualifies for class action status under one of Rule 23(b)'s three (3) criteria.  *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001), *amended and superceded on denial of rehearing by Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1266 (9th Cir. 2001) (noting that plaintiff bears the burden of demonstrating that he met each of Rule 23(a)'s four (4) requirements and at least one of Rule 23(b)'s requirements).

Rule 23(b) requires the party seeking certification to establish that either: (1) separate actions would create a risk of inconsistent adjudications; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class; or (3) common questions of law or fact predominate and class resolution is superior to other available methods.

ORDER * 4

The party seeking certification bears the burden of demonstrating that certification is appropriate. *Hawkins v. Comparet-Cassani,* 251 F.3d 1230, 1238 (9th Cir. 2001). District courts, while maintaining great discretion in certifying a class action, must nevertheless rigorously analyze whether the proposed class action meets Rule 23's requirements. *See Falcon,* 457 U.S. at 161. In performing this analysis, courts accept the complaint's allegations as true so long as the allegations are sufficiently specific to permit an informed decision on whether Rule 23's requirements are satisfied. *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975). The class members' substantive claims are generally irrelevant to this inquiry. *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 480 (9th Cir. 1983).

**C. Certainty**

Apart from Rule 23(a)'s explicit prerequisites, an implied prerequisite for certification is that the class is sufficiently definite. *DeBremaeker v. Short,* 433 F.2d 733 (5th Cir. 1970); *see also Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679 (S.D. Cal. 1999); *Whiteway v. FedEx Kinko's Office & Print Servs.,* 2006 U.S. Dist. Lexis 69193 at *3 (N.D. Cal. 2006). A sufficiently definite class exists if its class members are ascertainable and clearly identifiable. *DeBremaeker,* 433 F.2d at 734-35.

Here, Plaintiffs can identify class membership by examining the employee payroll and other records maintained by Defendants. This is a reasonable, objective method for ascertaining those individuals employed by Defendants during the 2005, 2006, or 2007 asparagus or cherry harvests. Accordingly, Plaintiffs satisfy the implicit certainty prerequisite for class certification.

ORDER * 5

**D. Rule 23(a)'s Requirements**

    1. <u>Numerosity</u>

    The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticable" does not mean "impossible," and a party seeking certification need only establish that joining all class members is difficult or inconvenient. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). As a general rule, classes exceeding forty-one (41) individuals satisfy the numerosity requirement. *See* 5 JAMES WM. MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 23.22[1][b] (3d. ed. 2004).

    Here, Plaintiffs' proposed class and subclasses satisfy Rule 23(a)(1)'s numerosity prerequisite. The Agricultural class consists of approximately 200 migrant workers; the Housing sub-class consists of approximately eighty (80) migrant workers; and the Retaliation sub-class consists of approximately 200 migrant workers. Joining up to 200 limited English speaking migrant workers, while not impossible, is impracticable. Numerosity exists.

    2. <u>Commonality</u>

    The commonality prerequisite is met if there are questions of law or fact common to the class as a whole. FED. R. CIV. P. 23(a)(2). This requirement is liberally construed. *Rodriguez v. Carlson,* 166 F.R.D. 465, 472 (E.D. Wash. 1996) (McDonald, J.) (citation omitted). The existence of shared legal issues with diverging factual predicates is sufficient to satisfy Rule 23(a)(2). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).

The Agricultural class shares the following legal and factual questions:

> (i)      whether Defendants failed to provide written terms and conditions of employment to plaintiff class members following plaintiffs' request;
>
> (ii)      whether Defendants failed to pay plaintiff class members agreed wages;
>
> (iii)      whether Defendants failed to pay plaintiff class members Washington's minimum wage;
>
> (iv)      whether Defendants failed to provide plaintiff class members with accurate itemized pay statements; and
>
> (v)      whether Defendants breached plaintiff class members' employment contracts.

The Housing subclass shares the following legal and factual questions:

> (i)      whether Defendants' migrant worker housing failed to comply with federal and state safety and health standards;
>
> (ii)      whether Defendants unlawfully permitted migrant workers to reside in housing not certified by the Washington State Department of Health;
>
> (iii)      whether Defendants failed to post Washington State Department of Health certifications before opening the migrant worker housing to occupancy; and
>
> (iv)      whether Defendants failed to post sufficient statements concerning occupancy terms and conditions at the migrant worker housing site.

ORDER * 7

The Retaliation subclass shares the following legal and factual questions:

>    (i)    whether Defendants discriminated against Retaliation subclass members because they exercised their rights under the Migrant and Seasonal Agricultural Protection Act (AWPA), 29 U.S.C. §§ 1801 *et. seq.;*
>
>    (ii)    whether Defendants interfered with, restrained, or coerced Retaliation subclass members from engaging in concerted activities for the purposes of mutual aid or protection;
>
>    (iii)    whether Defendants discharged Retaliation subclass members because they participated in concerted activities for purposes of mutual aid and protection; and
>
>    (iv)    whether Defendants terminated Retaliation subclass members in violation of Washington law.

As illustrated, there are sufficiently common legal and factual issues among the proposed class and subclasses. Commonality exists. *See, e.g., Rodriguez,* 166 F.R.D. at 472 (certifying a migrant farm worker class alleging, *inter alia,* inadequate housing and failure to provide proper AWPA disclosures); *Leyva v. Buley,* 125 F.R.D. 512, 513 (E.D. Wash 1989) (Quackenbush, J.) (certifying a migrant farm worker class alleging, *inter alia,* minimum wage violations).

3. <u>Typicality</u>

The typicality prerequisite is met if the representative parties' claims or defenses typify the class' claims or defenses. FED. R. CIV. P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably

coextensive with those of absent class members; they need not be substantially identical." *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1184 (9th Cir. 2007) (citation omitted).  Because the typicality requirement also focuses on the similarity between the lead plaintiffs' legal theories and those that they purport to represent, Rule 23(a)'s commonality and typicality prerequisites tend to merge. *Falcon,* 457 U.S. at 158 n.13.

Here, Plaintiffs' proposed class and subclasses satisfy Rule 23(a)(3)'s typicality prerequisite.  Both Plaintiffs Raul Coria and David Sandoval were migrant workers employed by Defendants during the 2005, 2006, or 2007 asparagus or cherry harvests.  Plaintiff Coria's claims are reasonably coextensive with absent Housing subclass members because he resided in Defendants' alleged sub-standard housing; Plaintiff Sandoval's claims are reasonably coextensive with absent Retaliation subclass members because Defendants terminated him after he allegedly, along with others, attempted to exercise his legal rights; and both Plaintiffs' claims are reasonably coextensive with the Agricultural class because they, along with approximately 200 other migrant farm workers, claim injury from Defendants' alleged wage violations.  There is an extensive interrelationship between the representative Plaintiffs' claims and the roughly 200 class members.  Typicality exists.

4. <u>Adequacy</u>

The adequacy prerequisite is met if the representative parties will fairly and adequately protect the class' interests. Fᴇᴅ. R. Cɪᴠ. P. 23(a)(4).  This prerequisite requires that: (1) the proposed representative Plaintiffs do not have conflicts of interest with the

ORDER * 9

proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Dukes,* 509 F.3d at 1185.

Here, Plaintiffs' proposed class and subclasses satisfy Rule 23(a)(4)'s adequacy prerequisite. There are no apparent conflicts of interest. In addition, the Court finds Plaintiffs are represented by qualified and competent counsel. Michael C. Subit, one of Plaintiffs' attorneys, has: 1) over fifteen (15) years in employment law experience; 2) successfully represented plaintiffs in several class actions suits; 3) spoken at several Continuing Legal Education seminars on class actions and wage and hour law; and 4) been listed Washington Law & Politics as a "Super Lawyer" for the last eight (8) years. Sean M. Phelan, one of Plaintiffs' attorneys, is fluent in Spanish and has over ten (10) years experience in employment law. Daniel G. Ford, one of Plaintiffs' attorneys, is fluent in Spanish, has over twenty-eight years experience in employment law, and has successfully represented parties in several class action suits. And both law firms - Columbia Legal Services and Frank Freed Subit & Thomas LLP - have dedicated considerable resources thus far and are prepared to invest the necessary resources to adequately represent the class going forward. The Court is persuaded that Plaintiffs' counsel will prosecute this action vigorously on the class' behalf.

**E. Rule 23(b)'s Requirements**

As stated, in addition to satisfying Rule 23(a)'s prerequisites, a party seeking certification must also demonstrate that the lawsuit qualifies for class action status under one of Rule 23(b)'s three (3) criteria. *Zinser,* 253 F.3d at 1186. Plaintiffs argue certification is warranted under Rule 23(b)(3), which permits certification when common

ORDER * 10

questions of law or fact predominate and class resolution is superior to other available methods.

1. <u>Common Questions Predominate</u>

The first requirement for seeking class action status under Rule 23(b)(3) is that common issues predominate. The goal is to assess whether the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) (citation omitted). "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved." *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 489 (E.D. Cal. 2006).

Here, common factual questions and potential legal remedies dominate this action. Each of the nearly 200 hundred low-wage, limited English migrant workers share common legal and factual questions regarding Defendants' alleged wage violations under the AWPA, Washington's Minimum Wage Act, RCW 49.46, and other various wage laws. They also share common legal and factual questions regarding Defendants' alleged retaliatory behavior. And finally, approximately 80 migrant workers share common legal and factual questions regarding alleged sub-standard living conditions and other housing violations. True, individual issues may arise. But each class members' claims need not be identical - the key is whether common issues predominate. *See Rodriguez,* 166 F.R.D. at 479 (finding Rule 23(b)(3) is satisfied because common issues predominated among migrant workers alleging AWPA violations). There is no question that subtle differences between the class members - such as the hour amounts each class member worked - are minor and overshadowed by the

shared issues regarding alleged employment and housing violations. Accordingly, common questions predominate.

2. <u>Superiority</u>

The second requirement for seeking class action status under Rule 23(b)(3) is that class resolution is superior to other available methods. The four (4) factors affecting superiority are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.* With respect to the first factor, it is highly likely that the individual plaintiffs would not pursue this litigation absent class certification given "their lack of English, their presumably limited understanding of the legal system, the fact that few live permanently within the Eastern District of Washington, and their generally indigent status . . . ." *Rodriguez,* 166 F.R.D. at 480 (citing *Leyva,* 125 F.R.D. at 512). With respect to the second factor, the named Plaintiffs have already invested substantial resources in the present litigation. With respect to the third factor, the Eastern District of Washington is an appropriate forum because Defendants' alleged conduct occurred in the Eastern District, Defendants reside in the Eastern District, and nearly all of the 200 migrant farm workers return to the Eastern District for each growing season. And with respect to the fourth factor, not only are Plaintiffs represented by experienced class-action litigators, but also

ORDER * 12

class certification promotes efficiency, cuts costs, and prevents confusion over possible differing outcomes. Considering these factors, certification is appropriate.

**F. Appointment of Counsel**

Considering the substantial experience and willingness to commit the necessary resources to prosecute this action, the Court finds appointing Columbia Legal Services and Frank Freed Subit & Thomas as class co-counsel is appropriate.

**G. Subclasses**

Rule 23(c)(5) enables district courts to break a class into subclasses "[w]hen appropriate . . . ." Each subclass is treated as an individual class, and must independent meet Rule 23's requirements. *Id.* The Court finds that it is appropriate to create two subclasses - one for workers who resided in migrant worker housing during the relevant times, the other for workers who were threatened or terminated by Defendants on May 19, 2006. As detailed above, both subclasses are sufficiently definite and satisfy Rule 23's prerequisites.

**III. Conclusion**

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Class Certification **(Ct. Rec. 23)** is **GRANTED.**

2. The Court certifies the following general class in this matter:

All migrant and seasonal farm workers employed by Defendant Rizzuti Farms, Ltd. or Defendant John R. Rizzuti ("Defendant Employers") during the 2005, 2006, or 2007 asparagus or cherry harvests.

3. The Court certifies the following subclasses in this matter:

ORDER * 13

(1)   All workers who resided in the migrant worker housing provided by Defendant Employers during the 2005, 2006, or 2007 asparagus or cherry harvests; and

(2)   All workers who were threatened or intimidated by Defendant Employers or whose employment with Defendant Employers was temporarily or permanently terminated on May 19, 2006.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and distribute copies to counsel and Defendants at the following address: Rizzuti Farms, Ltd. 36 South 1st Ave., Othello, WA 99344.

**DATED** this_____6th_____ day of September 2008.


_____S/ Edward F. Shea_____
EDWARD F. SHEA
United States District Judge

Q:\Civil\2007\3076.Class.Certify.wpd

ORDER * 14