1
2
3
4
5
6
7
8
9                          UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF WASHINGTON
10

11   DAVID SANDOVAL, RAUL CORIA,
     and all similarly situated
12   persons,                            NO. CV-07-3076-EFS

13                     Plaintiffs,
                                         **ORDER GRANTING IN PART**
14              v.                       **PLAINTIFFS' MOTION FOR**
                                         **PROTECTIVE ORDER**
15   RIZZUTI FARMS, LTD., JOHN R.
     RIZZUTI, and JANE DOE
16   RIZZUTI, a marital community,

17                     Defendants.

18

19       Before the Court, without oral argument, is Plaintiffs' Motion for

20   Protective Order (Ct. Rec. 62), filed February 27, 2009.  After reviewing

21   the submitted material and relevant authority, the Court is fully

22   informed and grants in part Plaintiffs' protective order request.  The

23   reasons for the Court's Order are set forth below.

24                              **I. Background**

25       On August 31, 2007, Plaintiffs filed a class action complaint

26   alleging that Defendants violated several federal and state laws

     protecting basic worker rights.  (Ct. Rec. 1.)  The Court issued a
     ORDER * 1

1  Scheduling Order setting an April 11, 2009 discovery cutoff date.

2  (Ct. Rec. 35.)  During discovery, Defendants sought to obtain information

3  related to Plaintiffs' immigration status.  Unwilling to provide this

4  information, Plaintiffs filed the protective order request now before the

5  Court.

## II. DISCUSSION

### A.  Meet-and-Confer Requirement

Federal Rule of Civil Procedure 26 permits a party from whom discovery is sought to seek a protective order.  A prerequisite to judicial intervention is a certification "that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  FED. R. CIV. P. 26(c)(1).

Here, although the parties' certification is procedurally deficient, the Court nevertheless finds that the parties satisfied Rule 26's meet-and-confer requirement by meeting on February 12, 2009.[1]

### B.  Motion for Protective Order

Plaintiffs seek a protective order prohibiting Defendants from inquiring into matters related to their immigration status. (Ct. Rec. 62 at 2.) Defendants oppose a protective order, insisting that immigration status is relevant to liability, claims for back pay, and mitigation.  (Ct. Rec. 65 at 2.)

Although the federal rules permit liberal discovery, liberal discovery is allowed "for the sole purpose of assisting in the

---

[1]In the future, the parties shall file a separate, detailed certificate pursuant to LR 37.1(b).

ORDER * 2

preparation of trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34 (1984). "It is clear from experience that pretrial discovery . . . has a significant potential for abuse." *Id.* "This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Id.* at 34-35. Because of liberal discovery and the potential for abuse, the federal rules "confer[] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36.

Rule 26(b) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defenses . . . ." Although Rule 26(b) was substantively altered in 2000, courts and commentators agree that the amendments "do not dramatically alter the scope of discovery," which remains extremely broad. *EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 431 (D.C. Nev. 2006) (compiling a series of district court opinions agreeing that Rule 26 still contemplates liberal discovery).

In the same vein, "[d]istrict courts need not condone the use of discovery to engage in 'fishing expeditions.'" *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (citation omitted). Rule 26(c) permits a court to enter a protective order when the party seeking the order establishes good cause for protecting a party from "annoyance, embarrassment, oppression, or undue burden or expense . . . ." The burden of persuasion is on the party seeking the protective order to show good cause by "demonstrating harm or prejudice that will result from the discovery." *Rivera*, 364 F.3d at 1064; *see also Caesars Entm't, Inc.*, 237 F.R.D. at 432. "If a court finds particularized harm will result from

disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

## 1.   Particularized Harm

The harm in disclosing Plaintiffs' immigration status is significant and real.  If disclosed, documented workers would fear either alteration to their immigration status or revealing immigration issues with family and friends; undocumented workers would fear criminal prosecution and deportation.  *Rivera*, 364 F.3d at 1065.  Either way, farmhands would be reluctant to exercise their rights under existing state and federal laws for fear of repercussions from their employers.  The resulting "chilling effect" is impermissible.  *Id.*[2]

## 2.   Balancing of Interests

### i.   Relevance to Liability

Defendants insist that immigration status is relevant to liability under RCW 49.32.020.  The Court disagrees.  RCW 49.32.020,[3] which sets

---

[2]Defendants' willingness to treat as confidential the discovery relating to immigration status is unavailing.  Even requiring Plaintiffs to answer immigration status-related questions during discovery "would likely deter them, and future plaintiffs, from bringing meritorious claims."  *Rivera*, 364 F.3d at 1064.

[3]RCW 49.32.020 confers substantive rights to workers.  *See Bravo v. Dolsen Cos.*, 125 Wn.2d 745 (1995).

ORDER * 4

forth Washington's policy regarding the right for workers to engage in concerted activities to improve working conditions, states:

> WHEREAS, Under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protections . . . .

Nothing in the statute's plain language limits its protections based on immigration status or citizenship. Moreover, the Washington Supreme Court has already once rejected attempts to restrict the statute's broad scope. *Bravo*, 125 Wn.2d at 753 (rejecting an attempt to restrict the statute's protection only to unionized employees, finding that "[n]o such limitation exists in the statute"). This view is consistent with other statutes that confer rights to workers regardless of immigration status. *See, e.g., In re Reyes*, F.2d 168, 170 (5th Cir. 1987), *cert. denied,* 487 U.S. 1235 (1988) (finding that the federal Agricultural Worker Protection Act offers protections to both documented and undocumented workers); *Escobar v. Baker*, 814 F. Supp. 1491, 1498 (W.D. Wash. 1993) (finding that the Washington Farm Labor Contractor's Act offers protections to both documented and undocumented workers); and *Rivera*, 364 F.3d at 1065

ORDER * 5

(finding that Title VII and the California Fair Employment and Housing Act offer protections to both documented and undocumented workers).[4]

### ii.   Relevance to Damages

Defendants also argue that immigration status is relevant to back pay claims based on the Supreme Court's recent decision in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002). In *Hoffman*, the Supreme Court held that "awarding backpay to illegal aliens runs counter to policies underlying IRCA . . . ." *Id.* at 149. It is true that several courts, including the Ninth Circuit, have attempted to constrict *Hoffman's* reach by expressing "serious[] doubt" that the Supreme Court intended to preclude backpay outside the National Labor Relations Act context. *See, e.g., Rivera*, 364 F.3d at 1069. As Defendants correctly point out, however, RCW 49.32.020 is the "state analogue" to the National Labor Relations Act. *Bravo*, 125 Wn.2d at 754. As such, this case falls

---

[4]Defendants argue that conferring rights to undocumented workers via RCW 49.32.030 violates the Supremacy Clause because the federal Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1324a(a), prohibits employment of undocumented aliens. (Ct. Rec. 65 at 3.) This argument is unpersuasive. Not only do states enjoy broad authority under the police power to protect workers within a state, *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985), but also the legislative history indicates that IRCA was not intended to "undermine or diminish in any way labor protections in existing law," including in particular the labor rights of undocumented workers. 2005-3 Bender's California Labor & Employment Bulletin 1 (2005) (citing H.R. Rep. No. 99-682, at *58 (1986)).

ORDER * 6

within *Hoffman*'s purview, making immigration status relevant to Plaintiffs' backpay claims under RCW 49.32.020.[5]

### iii. Mitigation

The same is not true for mitigation. Defendants are free to propound discovery requests regarding what efforts Plaintiffs made to mitigate their damages, e.g., what efforts were made to secure alternative employment. But because immigration status does not assist with this inquiry, it is irrelevant to mitigation.

### iv. Private Interests

The Ninth Circuit's decision in *Rivera* contains a detailed discussion on the harm in disclosing information related to immigration status. 364 F.3d at 1064. The Court need not ingeminate the compelling interests in protecting such information. Suffice to say that the Court is highly concerned with condoning court-regulated discovery practices that deter plaintiffs from pursuing their employment rights and receiving their day in court.[6]

---

[5]Several district courts have concluded that *Hoffman's* immigration policies are not implicated - and immigration status is therefore not relevant - when employees seek backpay for work already performed. *See, e.g., Galaviz-Zamora, et. al. v. Brady Farms, Inc.*, 230 F.R.D. 499, 501-02 (W.D. Mich. 2005). Here, Plaintiffs seek backpay for both work performed and work not performed. (Ct. Rec. 72 at 2.)

[6]The Court takes no position on Defendants conducting their own independent investigation into Plaintiffs' immigration status. *See Rivera*, 364 F.3d at 1062.

ORDER * 7

### 3. Resolution

After weighing each parties' legitimate interests, the Court finds that the overriding interest in preventing the chilling of rights justifies a protective order at this time.  This protective order, however, is not permanent.  Should Plaintiffs survive summary judgment and it becomes clear that this case will proceed to trial, the Court will permit limited discovery into Plaintiffs' immigration status because it is relevant to Plaintiffs' backpay claims for work not performed.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Protective Order **(Ct. Rec. 62)** is **GRANTED IN PART.**  Defendants may not inquire into Plaintiffs' immigration status at this time.

2. **No later than one (1) week** after any Court Order finding that Plaintiffs' claims survive summary judgment, the parties shall meet and confer and submit a joint proposed plan for conducting limited discovery into Plaintiffs' immigration status as it relates to their backpay claims under RCW 49.32.020.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and to provide copies to counsel.

**DATED** this ___6th___ day of April 2009.


_____
S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge

Q:\Civil\2007\3076.PO.wpd

ORDER * 8