UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DAVID SANDOVAL, RAUL CORIA,
and all similarly situated
persons,

                    Plaintiffs,

            v.

RIZZUTI FARMS, LTD., and JOHN
R. RIZZUTI and JANE DOE
RIZZUTI, a marital community,

                    Defendants.

NO. CV-07-3076-EFS

**ORDER GRANTING AND DENYING IN
PART PLAINTIFFS' AND
DEFENDANTS' CROSS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT.**

    A hearing occurred in the above-captioned matter on August 6, 2009,
in Richland. Tami Arntzen and Daniel Ford appeared on behalf of
Plaintiffs David Sandoval, Raul Coria, and all similarly situated
persons. Ryan Edgely appeared on behalf of Defendants Rizzuti Farms and
John Rizzuti.  Before the Court were Plaintiffs' and Defendants' cross
motions for partial summary judgment. (Ct. Recs. 93 and 86.)  After
reviewing the submitted material and the relevant authority, the Court
is fully informed. Defendants' motion for partial summary judgment is
granted and denied in part; and Plaintiffs' motion for partial summary
judgment is granted and denied in part.

ORDER * 1

**BACKGROUND**[1]

**A.   The Parties**

Plaintiffs David Sandoval, Raul Coria, and approximately 200 certified unnamed class members ("agricultural class") worked for Defendants as seasonal farm hands during the 2005, 2006, or 2007 asparagus or cherry harvests.    Plaintiff Sandoval is a seasonal agricultural worker[2] and Plaintiff Coria is a migrant agricultural worker[3] as defined under the Migrant and Seasonal Agricultural Workers Protection Act. ("MSAWPA.")   29 U.S.C. § 1801-1872.    There are also two (2) certified subclasses.  The retaliation subclass, represented by Plaintiff Sandoval, includes all workers who were allegedly threatened or intimidated by Defendants or whose employment with Defendants was temporarily or permanently terminated on May 19, 2006.   The housing subclass, represented by Plaintiff Coria, includes all workers who resided in the migrant worker housing units owned by Defendants during the 2005, 2006, or 2007 asparagus or cherry harvests.

Defendant Rizzuti Farms, Ltd. is a family-run farming operation that grows, among other crops, asparagus and cherries near Mattawa, Washington.  The farm is an agricultural employer as defined by MSAWPA,

---

[1] The following facts, unless otherwise specified, are undisputed.

[2] "Seasonal" agricultural worker refers to a seasonal or temporary worker who is not required to be absent overnight from his permanent place of residence. 29 U.S.C. § 1802(10)(a)

[3] "Migrant" agricultural worker refers to a seasonal or temporary worker who is required to be absent overnight from his permanent residence. 29 U.S.C. § 1802(8)(A).

ORDER * 2

and so is subject to the terms of that Act.  Defendant John Rizzuti is in charge of farming operations.  Defendants employ Sueanne Rizzuti[4] to maintain accounting records.  Defendants also employ supervisor Mauricio Navarette and payroll administrator Travis Yager to assist in non-labor farm operations. (Ct. Recs. 89 & 90.)

**B.    General Hiring Practices and Seasonal Employee Pay Structure**

After Defendants determine their seasonal hiring needs, Mr. Navarette does Defendants' hiring.  Mr. Navarette finds seasonal employees by making calls to past employees and by talking with individuals at a local store.  Others hear that Defendants are hiring and show up looking for work.  Mr. Navarette informs those he encounters that if they are willing to work, terms of employment can be explained to them when they arrive at the farm. (Ct. Rec. 99, Ex. E at 96.)  Many of the seasonal employees return year after year. (Ct. Rec. 99, Ex. D at 64.)

Employees are told their wages orally when they are hired, but no written terms are memorialized.  Employee wage rates are listed on employee paychecks.  Once hired, employees must fill out tax documents, such as W-4 and I-9 forms.  Mr. Yager then creates a record from these tax documents.  The record comprises each employee's address, crew number, and housing unit number (if applicable).[5] (Ct. Recs. 25 at 2; 89 at 2.)

---

[4] Sueanne Rizzuti is Mr. Rizzuti's sister and is a co-owner of Rizzuti Farms, but she is not named as a defendant in her individual capacity.

[5] Plaintiff Sandoval disputes that a separate record is created for each employee.

ORDER * 3

Typically, employees are paid on a piece-rate rather than an hourly basis.  Checkers provide and record each employees' harvested pieces and hours worked.  Hours are recorded so that supplemental wages can be calculated in the event that the piece-rate wages are below minimum wage.[6]  These records are then given to Mr. Jager, who enters employee hours and harvested pieces into the payroll system. (Ct. Rec.  89 at 2-3.)

Mr. Navarette handles all employee questions, including questions regarding compensation.  Employee questions typically do not go directly to Defendant Rizzuti because he does not speak Spanish. (Ct. Rec. 24 at 2.)   Mr. Navarette does, however, run some employment questions by Defendant Rizzuti.

**C.  Agricultural Class's Claims**

The first certified class is the agricultural class, represented by Plaintiffs Sandoval and Coria.  This class brings several federal and state claims, alleging that Defendants failed to 1) provide written terms of employment under sections 1821(a) and 1831(a) of MSAWPA; 2) pay wages due under sections 1822(a) and 1832(a) of MSAWPA, and RCW 49.52.050, 49.48.010 and 49.46.020; 3) maintain and provide employees with accurate payroll records under sections 1821(d) and 1832(c)(1) of MSAWPA; and 4) disclose worker rights in a conspicuous place under sections 1821(b) and 1831(b) under MSAWPA.

In particular, Plaintiffs allege Defendants orally agreed to pay Plaintiffs on a piece-rate basis for all harvest years.  In 2006,

---

[6] Plaintiffs dispute the accuracy of recorded hours. (*See* Ct. Recs. 24 at 3.)

ORDER * 4

Plaintiffs were promised a per-pound bonus if they worked the entire asparagus harvest. (Ct. Rec. 24 at 2.)   Plaintiffs allegedly did not receive the piece-rate wages or the end-of-season bonus as promised. (Ct. Rec. 25 at 2-3, 6.)

Plaintiff Coria claims that Defendants also failed to 1) pay him lawful minimum wages, 2) pay him for all the piece units that he harvested during the 2006 asparagus and cherry harvests, and 3) maintain accurate paycheck documentation. Plaintiff Coria alerted Mr. Navarette to the problems.  Mr. Navarette said he would look into it, but never got back to Plaintiff Coria and never corrected the alleged errors.

**D.    Retaliation Subclass's Claims**

The second certified class is the retaliation subclass, represented by Plaintiff Sandoval.  This subclass brings federal and state claims, alleging that Defendants 1) intentionally discriminated against and unlawfully terminated Plaintiffs who were exercising their legal rights under §§ 1855, 1822(c), and 1832(c) of MSAWPA, and 2) interfered with employees' right to engage in concerted activities and wrongfully terminated them for this conduct.

In particular, the retaliation subclass alleges that Mr. Navarette orally promised Plaintiffs a $.03 piece-rate wage increase during April of the 2006 asparagus harvest, set to take effect in the first week of May 2006. (Ct. Rec. 25 at 2-3.)  Plaintiffs did not receive the piece-rate increase in their May 2006 paychecks as promised.  When Plaintiffs complained, Mr. Navarette told them that the piece-rate increase would be reflected in their next paycheck.

On May 19, 2006, when Plaintiffs once again did not receive the promised wage increase, approximately 200 workers, including named

ORDER * 5

Plaintiffs, confronted Defendant Rizzuti. (Ct. Rec. 25 at 4.)  Defendant Rizzuti refused to honor the promised piece-rate wage increase and told workers that they needed to return to work at the offered rate or leave the farm.  He then called the Grant County Sheriff's Department.  Several deputies responded and repeated Defendant Rizzuti's demands.  Some workers, including Plaintiff Sandoval, left the farm.  Others, including Plaintiff Coria, returned to work because they lived in Defendants' housing and could not obtain other housing within 24 hours.  Workers that remained were given the previously promised $.03 piece-rate wage increase.[7]

In addition, after the May 19, 2006 paycheck dispute, Plaintiffs requested written employment terms from Mr. Navarette.  Mr. Navarette told Plaintiffs that he could not provide them.[8]

**E.  Housing Subclass's Claims**

The third certified class is the housing subclass, represented by Plaintiff Coria.  This class asserts federal claims, specifically that Defendants failed to 1) adhere to state health and safety standards as

---

[7] The parties dispute when Mr. Rizzuti agreed to the piece-rate increase during discussions.  Defendants contend that employees were told that they would be given the increase if they returned to work; Plaintiffs contend that employees who remained were given the promised rate after sheriffs deputies advised that employees need to leave if they were unwilling to work at offered rates.

[8]  Defendants disagree that anyone, including Plaintiff Sandoval, requested written terms of employment. (Ct. Rec. 98 at 9 fn 1.)

ORDER * 6

required under §§ 1823(a),(b) of MSAWPA, and 2) post a notice of worker rights in each unit as required under § 1821(c).

Defendants house some migrant workers during harvest seasons. Mr. Navarette determines which employees will occupy which units.[9] Defendants then record employee housing assignments on the employees' W-4 or I-9 forms when hired. These tax documents are the only records on which Defendants log housing assignments. No documentation is provided to employees. Defendants did, however, post a letter in each apartment unit welcoming employees to the farm. (*See* Ct. Rec. 89, Ex. A.) This letter asks employees to keep the units clean and informs them that they will be charged for damage to the units.

The apartment units were inspected by the Washington State Department of Health ("Health Department") and certified for compliance with Health Department standards in 1989 and 2008. In 2008, Defendants obtained a license from the Health Department certifying that Defendants' apartment units could house sixty-six (66) residents in the eleven (11) units, or six (6) persons per unit. (Ct. Rec. 91 at 2, Ex. A at 4.)

Plaintiff Coria was assigned to an apartment unit during the 2006 asparagus harvest. Plaintiff Coria claims that eight (8) people occupied his unit in 2006. Defendants' tax records indicate that only five (5) people were assigned to this unit and that some individuals that Plaintiff Coria claims occupied his unit were in fact assigned to different units. (Ct. Recs. 88 at 4, ¶18; 114, Ex. B at 41.) Defendants'

---

[9] It is unclear whether Mr. Navarette communicates housing assignments directly to each employee. Plaintiff Coria claims that he learned of his housing unit assignment from another housing occupant.

ORDER * 7

tax records do indicate, however, that eight (8) people were assigned to unit 12 in both 2006 and 2007. Additionally, other employees have submitted declarations averring that eight (8) people lived in their units. Plaintiffs also claim that they were not provided written documentation of their housing assignments or housing rights, in violation of state and federal health and safety requirements. (Ct. Recs. 90 at 3; 116-120.)

**DISCUSSION**

**I.  Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

ORDER * 8

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

When parties file cross-motions for summary judgment, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Fair Housing Council of Riverside County v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001).  In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion. *Id.*

## II.  Defendants' Motion for Partial Summary Judgment (Ct. Rec. 86)

Defendants move for partial summary judgment on several claims. Plaintiffs oppose the motion on all these claims except their claim for not having been paid wages due.

### A.   Standing - 2007 Agricultural Class Violations and 2005 Housing Subclass Violations

Defendants seek summary judgment on all 2007 claims and all 2005 housing subclass claims on the basis that named Plaintiffs lack standing and cannot represent unnamed class members for years in which they were

not employed or housed by Defendants.  Named Plaintiffs do not dispute that they did not work for Defendants in 2007 and that they did not live in Defendants' housing in 2005.  Rather, named Plaintiffs contend that Defendants belatedly oppose Plaintiffs' class certification motion, which the Court granted already. (Ct. Rec. 52.)  The Court agrees.

A plaintiff is permitted to represent unnamed class members who have common claims depends if he is able to meet  Rule 23(a)'s requirements. *See Hartman v. Duffy*, 158 F.R.D. 525, 546-47 (D. D.C. 1994); *see also Freeman v. Motor Convoy, Inc.*, 68 F.R.D. 196, 204-05 (N.D. Ga. 1975) "Once a class representative meets the threshold individual standing requirement, no additional standing requirement is required; individual standing is sufficient to confer the right to assert issues that are common to the class." 1 William B. Rubenstein, Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 2:5 (4th ed. 2009).

Defendants' standing challenge is a disguised opposition to class certification.  This Court previously held that Rule 23(a)'s requirements have been satisfied in this case.  (Ct. Rec. 52.).  Therefore, Defendant's standing challenge is denied.

**B.    Agricultural Class Claims**

The agricultural class, represented by Plaintiffs Sandoval and Coria, alleges that Defendants failed to 1) provide written terms of employment; 2) pay wages due; 3) maintain and provide employees with accurate payroll records; and 4) disclose worker rights in a conspicuous place.  Defendants move for summary judgment on the claims based on the failure to provide written terms of employment in 2005, the failure to disclose worker rights, and the failure to pay wages due in 2005.

### 1.    Written Employment Terms - 2005[10]

Agricultural employers that recruit migrant workers must disclose specific terms of employment in writing.  29 U.S.C. § 1821(a). Defendants argue that they were not required to provide written terms of employment to either named Plaintiff because Plaintiff Coria was not an employee in 2005 and Plaintiff Sandoval was not a migrant worker subject to § 1821(a) of MSAWPA.  (Ct. Rec. 98 at 6, 7.)  Plaintiffs counter that Defendants' position is essentially the standing argument discussed in Section A, *supra*.  (Ct. Rec. 114 at 3-5.)  The Court agrees.

Although it is undisputed that Defendants did not employ Plaintiff Coria in 2005, as discussed previously, this Court already decided that Plaintiff Coria has standing to sue on class's behalf.  Therefore, Defendants' motion as it relates to this claim is denied.

### 2.    Disclosure of Worker Rights - All Years[11]

Agricultural employers must post a sign stating the rights and protections afforded to seasonal and migrant agricultural workers in a conspicuous place.  29 U.S.C. §§ 1821(b), 1831(b).  Defendants argue that they posted a sign detailing workers' rights in a conspicuous place: inside the shop near where asparagus is weighed.  Defendants assert this place is accessible to all workers.  Plaintiffs insist that the sign was not in a conspicuous place because named Plaintiffs did not enter the shop (indeed, they allegedly believed they were not permitted to enter the shop) or observe the sign themselves. (Ct. Rec. 8, Ex. A at 28-29; Ex B at 40.)

---

[10] Both parties moved for summary judgment on this claim.

[11] Only Defendants moved for summary judgment on this claim.

ORDER * 11

1    Viewing the evidence in the light most favorable to Plaintiffs,
2    Defendants' motion on this issue is denied because the conspicuousness
3    of the sign is a fact question for the jury.  A reasonable juror could
4    find that the sign was not posted in a conspicuous place if Plaintiffs
5    never entered the shop.

6    **3.    Wage Claims – 2005**[12]

7    Agricultural employers must pay the wages owed to each worker when
8    they are due and must not violate the terms of any working arrangement
9    made between the employer and workers.  29 U.S.C. §§ 1822(a), (c); §§
10   1832(a), (c).  Further, all employers must pay workers lawful minimum
11   wage as well as all wages due. RCW 49.46.020, 49.48.010, 49.52.050(2).

12   Defendants argue that Plaintiff Sandoval—the only named Plaintiff
13   employed in 2005—has not asserted any wage violations during the 2005
14   harvest year.  (Ct. Rec. 98 at 10.)

15   No material factual dispute exists on this issue.  Plaintiffs did
16   not assert any 2005 wage-related claims in their amended complaint, nor
17   did they respond to Defendants' summary judgment motion on this claim.
18   (Ct. Recs. 114; 2 at 9-10.).  Defendants have presented evidence that
19   Plaintiff Sandoval was paid for the hours worked based on the hours
20   recorded, but Plaintiff Sandoval did not assert that his 2005 hours were
21   incorrect.  Accordingly, the Court will grant Defendants' motion with
22   respect to 2005 wage-related claims.

23   ///
24   ///
25   ///
26

----

[12] Only Defendants moved for summary judgment on this claim.

ORDER * 12

**C.   Retaliation Subclass Claims**[13]

The retaliation subclass, represented by Plaintiff Sandoval, alleges that Defendants intentionally discriminated against and unlawfully terminated Plaintiffs who were exercising their legal rights, and interfered with Plaintiffs' right to engage in concerted activities for mutual aid and protection.  Defendants move for summary judgment on all these claims.  These are the specific federal and state provisions Defendants allegedly violated:

  1. "No agricultural employer shall, without justification, violate the terms of any working arrangement made with any migrant or seasonal agricultural employee."  29 U.S.C. §§ 1822(c), 1832(c).

  2. "No person shall intimidate, threaten, coerce, blacklist, discharge, or in any manner discriminate against any migrant or seasonal agricultural worker because such worker has, with just cause, exercised his rights afforded by the act." 29 U.S.C. § 1855(a).

  3. "Individuals shall be free from interference, restraint, or coercion from labor employers, or their agents, when engaging in 'concerted activities' for the purpose of collective bargaining or other mutual aid or protections under terms of employment." RCW 49.32.020.

"Concerted activities" under RCW 49.32.020 are defined as activities undertaken by employees in unison with one another for the purpose of

---

[13] Only Defendants moved for summary judgment on these claims.

ORDER * 13

improving their working conditions. *Briggs v. Nova Services*, 135 Wn. App. 955, 964 (2006) (citations omitted).

Defendants argue that Plaintiffs' retaliation claims are meritless because Defendants did not discharge or terminate Plaintiffs, and Defendant Rizzuti did not threaten, intimidate, or coerce Plaintiffs to continue working when he asked Plaintiffs to return to work or leave. (Ct. Rec. 98 at 8-9.)  Plaintiffs counter that, because Mr. Navarette already promised them a $.03 piece-rate wage increase in April or early May of 2006, Defendant Rizzuti's offer was not an offer to continue working.  Rather, it was a threat designed to get employees to work at a piece rate below what had been promised, in violation of both Washington law and MSAWPA.  Those who chose not to work at Defendants' lower-than-promised piece-rate offer were unlawfully terminated because the offer violated prior oral employment arrangements.  Additionally, for those who lived in Defendants' housing, the offer was coercive because many Plaintiffs had no other place to live.  (Ct. Rec. 114 at 12-19.)

Defendants' motion with respect to all of Plaintiffs' retaliation and unlawful termination claims is denied.  With regard to Plaintiffs' claims arising under §§ 1822(c), 1832(c) of MSAWPA, a reasonable juror could find that Defendants breached the parties' oral employment terms when they refused to pay promised piece rates.

Defendants' motion is denied with respect to Plaintiffs' claims arising under § 1855(a) of MSAWPA and RCW 49.32.020 because a reasonable juror could find that Defendants' actions constituted a threat or coercion.  Defendants not only told Plaintiffs that they must leave the farm if they chose not to return to work at below the previously promised piece rates, but also Defendant Rizzuti called Grant County Sheriff's

ORDER * 14

deputies to assist him in ensuring his orders were followed.  This act could reasonably be considered threatening.  Further, employees like Plaintiff Coria, who resided in Defendants' housing, were pressured to return to work at below the promised rates because they would have had to vacate Defendants' housing within 24 hours, perhaps being forced into homelessness, if they chose not to work on Defendants' terms.  A reasonable juror could therefore find that Defendant Rizzuti's proposition was coercive.

**D.    Housing Subclass Claims**[14]

The housing subclass, represented by Plaintiff Coria, alleges that Defendants housed Plaintiffs in overcrowded apartment units, thereby violating state health and safety requirements. Defendants insist they are entitled to summary judgment because the alleged violation was unintentional.

An owner of real property who houses migrant agricultural workers is responsible for ensuring that the facilities comply with federal and state safety and health standards.  These standards require that each unit has adequate individual space, cooking facilities and food storage, and hand-washing facilities.  29 U.S.C. § 1823(a).  While § 1823 does not require a violation to be intentional, intent is required before a court may award damages for violations.  § 1854(c)(1).

Defendants argue that they did not intentionally violate § 1823(a) of MSAWPA because they did not know that the units were overcrowded.

---

[14] Both parties moved for summary judgment on the claim of intentional violation of § 1823(a); only Plaintiffs moved for summary judgment on remaining housing subclass claims.

ORDER * 15

While Plaintiff Coria claims that eight (8) occupants lived in his housing unit, which was later certified for six (6) occupants, Defendants' housing records suggest that only five (5) people occupied his unit.[15] (Ct. Rec. 98 at 5-6). Plaintiffs counter that Defendants' acts satisfy the liberally-construed intent requirement because, regardless of room assignments, eight (8) people occupied Plaintiff Coria's unit in 2006, which resulted as a natural consequence of Defendants' failure to assure housing assignments were followed. (Ct. Rec. 114 at 5-9).

Intent under § 1823(a) does not mean specific intent to violate the law. Rather, it holds a person liable for natural consequences of his acts. *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1345 (5th Cir. 1985);[16] *see also Rodriguez v. Carlson*, 943 F. Supp. 1263, 1271 (E.D. Wash. 1996) (noting that the "intentional" requirement has been construed liberally to impose liability on individuals for the natural consequences of their acts).

Although Defendants assigned only five (5) employees to Plaintiff Coria's unit, Defendants assigned eight (8) employees to another unit in both 2006 and 2007. Therefore, a reasonable juror could find that

---

[15] Although Plaintiff Coria names specific people who occupied his unit, all but one were assigned to other units.

[16] The Fifth and Seventh Circuits interpret the "intent" requirement under the Farm Labor Contractor Registration Act, ("Labor Act"), 7 U.S.C. §§ 2041-2055 [Repealed]. Although now repealed, cases interpreting the Labor Act are nevertheless informative because MSAWPA supersedes the Labor Act and did not change the intent requirement.

ORDER * 16

Defendants' failure to ensure that Plaintiff Coria's unit was only occupied by six (6) or fewer residents and Defendants' decision to assign eight (8) employees to other units were intentional, and Defendants' motion with respect to this claim is denied.

**III. Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 93)**

Plaintiffs move for partial summary judgment on several claims. Defendants oppose the motion on all claims.

**A.    Agricultural Class Claims**

The agricultural class, which is represented by Plaintiffs Sandoval and Coria, alleges that Defendants failed to provide written terms of employment, pay wages due, maintain and provide employees with accurate payroll records, and disclose worker rights in a conspicuous place. Plaintiffs move for summary judgment on two (2) payroll record-keeping claims: failure to keep accurate employee addresses and paying multiple employees on the same paycheck. Also, Plaintiffs move for summary judgment on their claim that Defendants failed to disclose worker rights in a conspicuous place.

**1. Record-Keeping Claims under  §§ 1821(d)(1), 1831(c)(1).**

Agricultural employers must keep records of wages paid, piecework units earned, and number of hours worked for each employee for three years. 29 U.S.C. §§ 1821(d)(1), 1831(c)(1). Each employee's address also must be maintained with payroll records. 29 C.F.R. § 500.80 (2009). Any employee aggrieved by a violation may bring action against his employer. 29 U.S.C. § 1854(a).

Plaintiffs argue that Defendants violated these provisions because they failed to keep accurate permanent addresses for employees and recorded and compensated the work of multiple employees under one name.

(Ct. Rec. 94 at 16–18.)  Defendants counter that Plaintiffs were not aggrieved by the failure to record accurate employee addresses, and that recording Plaintiff Sandoval's wife's wages on Plaintiff Sandoval's paycheck was an isolated event.  (Ct. Rec. 111 at 7.)

### a.  Employee Addresses[17]

It is undisputed that Defendants did not maintain permanent addresses for all employees.  In some cases they kept no address, in others an incorrect or partial address.  For example, Raul Coria's address in 2006 tax documents is listed as 603 N. Front Street in Yakima, WA.  In his deposition, Plaintiff Coria represented that he had lived in Mattawa for the past eight (8) years.  (*See* Ct. Recs. 97 Exs. CC-II, Ex. DD at 343, Ex. G at 117.)

Although Defendants failed to keep accurate address records, Plaintiffs did not assert that Defendants failed to keep accurate records of employee addresses in their amended complaint. (Ct. Rec. 2 at 10 and 14, ¶¶ 58 and 98.)  Plaintiffs cannot move for summary judgment on a claim not properly before the Court.  In order to bring this claim, Plaintiffs must amend their complaint.  At this stage in litigation, Plaintiffs are subject to Rule 16's good-cause standard because the Court has already issued the scheduling order.  Fed. R. Civ. P. Rule 16(b)(3), (4); *see also Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1051 (9th Cir. 2004) (holding that Rule 16's good-cause standard must be met if the court is to grant leave to amend a complaint after the scheduling order has been filed).  Plaintiffs' motion for summary judgment on this issue is therefore denied.

---

[17] Only Plaintiffs moved for summary judgment on this claim.

### b.    Multiple Employees Paid on One Paycheck[18]

Although Defendants admit that they paid Plaintiff Sandoval for hours that his wife worked, Defendants claim that Plaintiff Sandoval specifically requested that his wife be placed on his paycheck. (Ct. Rec. 97  Ex. E at 85-86.)  Plaintiff Sandoval does not dispute this. If Plaintiff Sandoval did in fact request that his wife be paid on his paycheck, a reasonable juror could find that Plaintiff Sandoval was not aggrieved by Defendants' conduct.  Plaintiffs' motion on the paycheck-violation claim is therefore denied.

### 2.    Worker Rights Disclosure Claim under § 1821(a)[19]

Every agricultural employer must disclose in writing terms and conditions of employment at the time of the migrant workers' recruitment.  29 U.S.C. § 1821(a).  Plaintiffs argue that Defendants were required to provide each migrant worker with written terms and conditions at the time of recruitment.  Defendants contend that their actions did not constitute recruitment because "recruit" is not synonymous with "employ" or "hire."[20]

Neither MSAWPA nor binding precedent defines recruitment. Plaintiffs argue that "recruit" means "to hire or otherwise obtain or secure the services of," and that this includes all pre-employment discussions that relate to a worker's employment.  *Escobar v. Baker*,

---

[18] Only Plaintiffs moved for summary judgment on this claim.

[19] Only Plaintiffs moved for summary judgment on this claim.

[20] The parties do not dispute that Defendants did not provide written terms of employment to any *migrant* workers during the 2005-2007 harvests. (Ct. Rec. 133 at 5, ¶ 22.)

ORDER * 19

814 F. Supp. 1491, 1502 (W.D. Wash. 1993) (*citing Contreras v. Mt. Adams Orchard Corp.*, 744 F.Supp. 1007 (E.D. Wash. 1990)). In *Escobar*, the plaintiff showed up at the farm looking for work after hearing of the opportunity from the farm foreman in an English class. Although summary judgment was denied because factual disputes remained regarding the exact detail of pre-employment discussions, the court found that indirect recruitment includes situations where the farm "puts out the word" that work is available and workers respond by showing up at a farm to work. *Id*. at 1503. Plaintiffs argue here that Defendants put out the word when Mr. Navarette called former workers in Mexico, talked to people at the grocery store, and ran employment advertisements on a local radio station in 2007.

Citing *Elizondo v. Podgorniak*, 70 F. Supp.2d 758, 776 (E.D. Mich. 1999), Defendants contend that they did not recruit migrant workers. In *Elizondo*, the court found that employers had not recruited migrant workers because the plaintiffs sought employment from the defendants after hearing about the work from a third party at a local store. The court reasoned that third-party communications did not constitute "putting out the word" when the plaintiff showed up at the farm seeking employment after learning of available opportunities. According to *Elizondo*, Congress intended that written terms should be provided to recruits before the actual migration to the work site to ensure that workers have full information about where they are going and what the conditions will be when they arrive before they begin their journey. *Id*. (citing 1982 U.S.C.C.A.N. at 4560). Defendants argue that Plaintiff Coria was not recruited because he showed up and sought employment from Defendants after talking to Homero Mondragon, another

ORDER * 20

farm employee, not because Defendants recruited him.  Further, conversations between Plaintiff Coria and Mr. Mondragon were brief, merely communicating that "there was work," not that Defendants sought employment or had put out the word.

Plaintiff Coria was not recruited under *Baker* or *Elizondo*.  Both cases turn on whether a farm "puts out the word."  Plaintiff Coria showed up and sought employment from Defendants after talking to Mr. Mondragon.  There is no evidence that Mr. Navarette or other farm employees put out the word through Mr. Mondragon.  Further, while some unnamed class members may have been recruited, remaining factual disputes make this determination difficult.  For example, while Mr. Navarette stated that he called Mr. Mondragon in Mexico to find out if he and his family were coming to work for the 2006 harvest, he also stated that the Mondragons come from Mexico every year to work harvests for Defendants and other farms.  Therefore, this phone call does not clearly establish that Mr. Navarette recruited the Mondragons.  In addition, Defendants dispute Plaintiffs' claim that employees were recruited through employment advertisements on the radio.  Plaintiffs have not established that any employees recruited through radio advertisements were migrant workers that lived in the Defendants' housing.  Given these factual disputes, Plaintiffs' motion for summary judgment on this issue is denied.

**B.  Housing Subclass Claims**

The housing subclass, represented by Plaintiff Coria, asserts that Defendants violated 29 U.S.C. § 1823 by housing Plaintiffs in overcrowded, uncertified housing units.  Also, the housing class alleges that Defendants violated § 1821(c) by failing to disclose the

ORDER * 21

required terms and conditions of occupancy.  Plaintiffs moved for summary judgment for all harvest years on their 1) §1823(a) claim for overcrowded housing units, 2) § 1823(b)(1) claim for failure to post a Health Department Certification, and 3) § 1821(c) claim  for failure to disclose terms of occupancy.

The parties agree that Defendants provided housing for migrant workers[21] and that Defendants owned or controlled the housing occupied by the migrant workers during the years in question. (Ct. Rec. 133 at 6-7.)

### 1.    Health and Safety Violations under §1823(a)[22]

Every employer that provides housing for migrant agricultural workers is responsible for ensuring that the housing units comply with federal and state safety and health standards.  29 U.S.C. § 1823(a). The Washington State Health Code establishes the minimum health and safety standards for temporary worker housing.  WAC 246-358-001.  Under these standards, at least seventy (70) square feet of floor space must be provided for the first occupant and at least fifty (50) square feet of floor space must be provided for each additional occupant.  WAC 246-358-075(6).  In addition, each bedroom must have at least fifty (50) square feet for each occupant. WAC 246-358-075(7).

---

[21] While Defendants argue that not all workers living in their housing were migrant workers, housing occupants were required to be away from their permanent residence overnight, and therefore they are properly classified as migrant workers.

[22] Both Parties moved for summary judgment on this claim.

ORDER * 22

Each of Defendants' apartment units comprises a kitchen, two (2) bedrooms, and one (1) bathroom, totaling not more than 369 square feet of floor space. Each bedroom is 98 square feet. (Ct. Rec. 96 at 2-3.) Under the WAC provisions, each apartment contains sufficient space to house six (6) occupants, and each unit contains sufficient bedroom space to house four (4) occupants.

Although Plaintiff Coria claims that eight (8) people occupied his unit during the 2006 asparagus harvest, Defendants' records indicate that only five (5) people were assigned to this unit at that time. Defendants assert that some individuals that Plaintiff Coria claims occupied his unit were assigned to other units.[23] Resolution of this issue is a fact question for the jury. A reasonable juror could find that Plaintiffs did not follow Defendants' housing assignments. While it is undisputed that Defendants assigned eight (8) people to unit 12 during both the 2006 and 2007 harvest seasons, granting summary judgment for the class is improper because factual disputes exist regarding the extent of the violations Plaintiff Coria's claims.

_____

[23] Plaintiff Coria stated that seven (7) Mondragons occupied his unit (unit 8) in 2006: Homero, Ernesto, Juan, Amador, Rene, Alvaro, and one other Mondragon whose name he could not remember. But Eugenio was assigned to unit 12; Rene was assigned to unit 8; and tax records on file for Homero, Juan, and Alvaro Mondragon do not list housing assignments. In addition, Victor Reza was assigned to unit 8 in 2006, but Plaintiff Coria does not mention that he occupied unit 8. (Ct. Rec. 97, Exs. G, W, GG.)

### 2.   Health and Safety violations under § 1823(b)(1)

No facility may be inhabited by any migrant worker unless a state or local authority has certified that the facility meets applicable safety and health standards and the owner has posted a copy of the certification of occupancy at the site. 29 U.S.C. § 1823(b)(1). It is undisputed that Defendants' housing units were not certified in 2005-2007, in violation of §1823(b)(1). Therefore, no valid copy of the certification could have been posted at the site. Accordingly, Plaintiffs' motion on this claim is granted.

### 3.   Worker Rights Disclosure under §1821(c)

Agricultural employers that provide housing to migrant workers must post migrant workers' terms and conditions of occupancy in a conspicuous place. 29 U.S.C. § 1821(c). Such conditions include: 1) the name and address of the farm labor contractor, agricultural employer or agricultural association providing the housing, 2) the name and address of the individual in charge of the housing, 3) the mailing address and phone number where persons living in the housing facility may be reached, 4) who may live at the housing facility, 5) the charges to be made for housing, 6) the meals to be provided and the charges to be made for them, 7) the charges for utilities, and 8) any other charges or conditions of occupancy. 29 C.F.R. § 500.75(f) (2009).

The letter Defendants posted inside its apartment units lacked seven (7) of the eight (8) required terms. (*See* Ct. Rec. 89, Ex. A.) It merely welcomed the employees to the farm and set out rules for keeping the apartments clean. Therefore, Plaintiffs' motion with respect to this issue is granted.

Accordingly, **IT IS HEREBY ORDERED:**

    1.   Plaintiff's Motion for Partial Summary Judgment is **GRANTED AND DENIED IN PART.**

    2.Defendant's Motion for Partial Summary Judgment is **GRANTED AND DENIED IN PART.**

    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide copies to counsel.

    **DATED** this 1ˢᵗ day of September 2009.


                    S/ Edward F. Shea
                      EDWARD F. SHEA
             United States District Judge

ORDER * 25